

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
04/08/2013

| | | |
|---|---|---|
| IN RE: | § § | CASE NO: 12-33559 |
| SANDRA ANN WYCKOFF | § | CHAPTER 7 |
| Debtor(s). | § § § | JUDGE ISGUR |
| | § § | |
| EARLENE BUGGS | § § § | |
| Plaintiff(s), | § § | |
| vs. | § § | ADVERSARY NO. 12-03245 |
| SANDRA WYCKOFF | § § § | |
| Defendant(s). | § | |

## MEMORANDUM OPINION

The Court awards Earlene Buggs a judgment of $16,915.00 against Sandra Wyckoff (the debtor in the main bankruptcy case). The debt is excepted from discharge under § 523(a)(4), as it arises from a defalcation while acting in a fiduciary capacity.

### Background

Sandra Wyckoff owns and operates a boutique clothing business. Earlene Buggs worked with Wyckoff for a period of time. Buggs sued Wyckoff on December 28, 2009 over a dispute involving KLAR Collections, L.P. (the entity under which the business was being operated at the time). (Pl. Ex. 26 at 136). Buggs alleged that she and Wyckoff were equal partners in the business. Further, the complaint alleged that when Buggs attempted to sever the business relationship, Wyckoff took all of the partnership assets for herself (i.e., converted Buggs's property). (Pl. Ex. 26 at 136-46).

On December 14, 2010, the 295th Judicial District in Harris County, Texas, issued a judgment in favor of Earlene Buggs and against Sandra Wyckoff in the amount of $70,884.05 ($40,425.20 in actual damages plus $29,858.75 in attorney's fees and $600.00 in costs). (Pl. Ex. 22; ECF No. 1-3 at 1-2).

In addition, the judgment declared that Buggs was entitled to "[a]n order winding up and terminating the existence of the entity, KLAR Collections, L.P. and an order to the Clerk of this Court to file a certified copy of this decree terminating the existence of KLAR Collections, L.P. in accordance with Chapter 4 of the Texas Organizations Code." (Pl. Ex. 22; ECF No. 1-3 at 1-2). In accordance with Texas partnership law, Wyckoff was required to wind up the partnership and account to Buggs for her distributable share. TEX. BUS. ORG. CODE §§ 152.706 – 152.707. This was in addition to Wyckoff's obligation to pay Buggs the $70,884.05 judgment.

Wyckoff did not effectively appeal this ruling. (Case No. 11-33997, ECF No. 57 at 1).

Wyckoff did not wind up the partnership. Instead, she continued to operate the business. Wyckoff later transferred the assets to SRLC Inc. (a corporation owned solely by Wyckoff) and conducted business using this alternate entity. Wyckoff does not deny that she did this. (ECF No. 45 at 51).

Wyckoff first filed for chapter 13 bankruptcy on May 3, 2011, in the Southern District of Texas. (Case No. 11-33997, ECF No. 1). Although she had failed to follow the state court order to wind up, Wyckoff attempted to claim the trade fixtures and clothing inventory that were assets of the partnership as exempt property. (Case No. 11-33997, ECF No. 57 at 1; Pl. Ex. 25). This Court denied confirmation of her plan after finding it was not proposed in good faith. (Case No. 11-33997, ECF No. 57 at 1; Pl. Ex. 25). The Court noted Wyckoff's failure to abide by the state court order to wind up the partnership and her attempt to use bankruptcy (and her claim that the

property was exempt under the Bankruptcy Code) to avoid complying with the state court order. (Case No. 11-33997, ECF No. 57 at 1; Pl. Ex. 25).

Wyckoff was given fourteen days to convert to a chapter 7 or have the case dismissed. (Case No. 11-33997, ECF No. 57 at 1; Pl. Ex. 25). Ultimately the case was dismissed on December 2, 2011. (Case No. 11-33997, ECF No. 67).

Wyckoff continued to operate her clothing boutique during this period. SRLC continued to operate until May 2012. (ECF No. 45 at 56).

On February 13, 2012, Wyckoff filed for chapter 13 bankruptcy in the Central District of California. (Case No. 12-33559, ECF No. 1). The case was transferred back to this Court on May 9, 2012. (Case No. 12-33559, ECF No. 24).

On May 21, 2012, Buggs filed this adversary proceeding to have the full amount of the state court judgment excepted from discharge under § 523(a)(2), § 523(a)(4), and § 521(a)(1). (ECF No. 1 at 7).

Wyckoff moved for summary judgment on November 29, 2012. (ECF No. 19). Buggs responded on December 21, 2012, but did not file a cross-motion for summary judgment. (ECF No. 21).

On January 10, 2012, the Court granted in part and denied in part Wyckoff's motion for summary judgment. (ECF No. 37). The Court granted Wyckoff's motion for summary judgment as to Buggs's § 523(a)(2) and § 521(a) causes of action. (ECF No. 37 at 7). The Court denied Wyckoff's motion for summary judgment as to § 523(a)(4) as it related to damages resulting from the failure to wind up the partnership.

## Analysis

### I.   Section 523(a)(4)

Section 523(a)(4) excepts from discharge debts arising from defalcation while acting in a fiduciary capacity.  11 U.S.C. § 523(a)(4).  The Fifth Circuit has defined defalcation as "a willful neglect of duty, even if not accompanied by fraud or embezzlement."  *Bennett v. Bennett (In re Bennett)*, 989 F.2d 779, 790 (5th Cir. 1993) (citing *Moreno v. Ashworth*, 892 F.2d 417, 421 (5th Cir. 1990)).  Wyckoff willfully neglected a duty and converted the assets that she was charged with liquidating.

Under Texas law, the relationship of partners to one another is fiduciary in nature.  *See Bohatch v. Butler & Binion*, 977 S.W.2d 543, 545 (Tex. 1998) (recognizing "as a matter of common law that '[t]he relationship between . . . partners is fiduciary in character'") (internal quotations omitted); TEX. BUS. ORG. CODE § 153.003 ("[I]n a case not provided for by this chapter and the other limited partnership provisions, the provisions of Chapter 152 governing partnerships that are not limited partnerships and *the rules of law and equity govern*.") (emphasis added).

The duty of loyalty that partners owe to one another as fiduciaries extends to actions taken in the winding up of the partnership business.  TEX. BUS. ORG. CODE § 152.205(1)(A).  When the winding up process is complete, and after the partnership's property has been applied to discharge the partnership's obligations, the surplus assets "shall be applied to pay in cash the net amount distributable to partners . . . ." TEX. BUS. ORG. CODE §§ 152.706 – 152.707.

Wyckoff owes Buggs for converting the partnership asserts.  This constitutes a debt arising from defalcation while acting in a fiduciary capacity because it arose while Wyckoff (as Buggs's partner) was acting in a fiduciary capacity.

## II. Damages

Only the debt that arose from the defalcation is excepted from discharge under § 523(a)(4). The actual damages found by the state court as well as the attorney's fees awarded are not part of the debt excepted from discharge.

Had Wyckoff abided by the state court order and wound up the partnership, Buggs would have received half of the assets (after accounting for partnership liabilities). Because Wyckoff disobeyed the state court's order, converted the assets, and continued to operate the partnership for a period of time (before transferring the converted assets to another entity), the Court holds that Buggs is entitled to the greater of: (i) half of the value of the partnerships' assets as of the date of the order to wind up the partnership; and, (ii) half of the total gross income received by KLAR during the winding up period[1] minus some allowance for expenses.

The state of Wyckoff's financial records must be discussed before measuring the damages.

### a. Wyckoff's Financial Records

Wyckoff's personal and business financial records (including her tax returns) are grossly inadequate. It is likely that they are also fraudulent. The 2011 tax returns directly conflict with her trial testimony. The 2011 tax returns are missing a Form 1120S (required by the IRS to be filed by S Corporations).

At some point during the year 2011, Wyckoff ceased operating her business as KLAR and began to operate under an S Corporation known as SRLC. Wyckoff's personal income tax returns indicate that KLAR operated at a net loss for 2011, while SRLC allegedly made a distribution to Wyckoff (the 100% owner) of $9,972 (and apparently operated at a profit).

---

[1] By this the Court means the period of time where Buggs should have been winding up the partnership in accordance with the state court judgment.

Wyckoff filed a Schedule C for KLAR but failed to file a Form 1120S for SRLC. Wyckoff did, however, file a Schedule 1120S K-1 and a Schedule E related to her distribution from SRLC. The missing Form 1120S would have set forth all of the expenses attributable to SRLC's business (e.g., wages, rents, depreciation, etc.) as well as its gross income. It also would help distinguish the income attributable to KLAR from income attributable to SRLC.

KLAR allegedly operated at a loss, while SRLC (an S Corporation) distributed almost $10,000 to Wyckoff. The Court believes that Wyckoff simply filed a Schedule C as a combined tax document for KLAR and SRLC. (ECF No. 45 at 106) ("[T]he tax records that I have it was half SRLC, I think, and half of the year was KLAR Boutique or something to that effect."). In other words, the gross income and expenses listed on KLAR's Schedule C are for Wyckoff's clothing boutique business as a whole (which she operated using both the KLAR and SRLC entities during 2011). This might be an innocent error, were it not for the fact that Wyckoff filed a Form 1120S K-1 showing that SRLC made a distribution to her of $9,972. It appears that Wyckoff was deliberately trying to shield profits from judgment-creditor Buggs.

In addition to the missing Form 1120S, the following is a nonexclusive list of inaccuracies and incredible claims included in Wyckoff's tax returns.

Wyckoff claimed 11,900 business and investment miles driven during the year 2011 on KLAR's Schedule C, despite testifying that her car never left the city of Houston and that she travelled by plane for her inventory trips in 2011. (ECF No. 45 at 91-92).

Wyckoff deducted $6,862 for contract labor on KLAR's Schedule C, although at trial she could not remember having paid any contract employees or who these contract employees would have been. (ECF No. 45 at 90).

Wyckoff testified that she would take $4,000 per month from the business and use $2,300 to pay her monthly personal bills and $1,700 to pay monthly business expenses. (ECF No. 45 at 53-54). Income taken from a business and used to pay personal bills is personal income. This amounts to a minimum of $27,600 of personal income, although Wyckoff's 2011 personal tax return shows only $15,572 in total income.

KLAR's Schedule C listed as $0 the costs of goods sold, although Wyckoff testified that she buys inventory monthly. (Pl. Ex. 1; ECF No. 45 at 27). Wyckoff acknowledged that this was clearly an error. (ECF No. 45 at 27). It is quite possible that this amount ended up being placed under "supplies" as Wyckoff was unable to explain what kind of non-inventory supplies would have cost $23,313 during the course of the year. (ECF No. 45 at 107).

Wyckoff deducted $2,658 for legal expenses on KLAR's Schedule C, although she testified that KLAR was not sued during the year 2011 and that she could not remember what that expense would have been for. (ECF No. 45 at 29).

Although the veracity of Wyckoff's tax returns is not the direct issue before the Court today, the returns adversely affect Wyckoff's credibility. The returns directly impede the Court's ability to accurately assess Buggs's damages. The Court is left with the strong impression that Wyckoff simply manipulates the figures when she believes that it is in her interest to do so.

### b. Value of Assets at Wind-up

The burden is on Buggs to demonstrate the amount of damages. Buggs has proven damages of $9,800 based on the value of the assets as of the date of the State court's order.

In a lease application submitted by Wyckoff on November 3, 2011, she lists the following as assets: (i) 3 apple computers valued at $4,000.00; (ii) 4 flat screens valued at $1,600.00;

(iii) store fixtures valued at $4,000.00; and, (iv) store inventory valued at $10,000.00.  (Pl. Ex. 2).  This lease application includes both Wyckoff's personal property and property related to Wyckoff's business.  (Pl. Ex. 2).

As stated above, Wyckoff acknowledged transferring the assets from KLAR into SRLC. (ECF No. 45 at 50-51).  Wyckoff specifically acknowledged that the fixtures were from KLAR. (ECF No. 45 at 51).

The store inventory is more difficult to ascertain due to the state of Wyckoff's financial records.  The $10,000 figure provided by Wyckoff in the November 3, 2011 lease application seems an appropriate measure of the value of the inventory.  Assuming that Wyckoff (who testified that she purchased inventory routinely every month) replenished inventory at the same rate, she would have had approximately the same amount of inventory ($10,000.00) at the time of the wind up order as on November 3, 2011.

The Court will also include the value of the 3 apple computers and the 4 televisions.  The televisions were not specifically discussed by Wyckoff at trial.  As for the 3 apple computers, Wyckoff could not remember whether she listed the computers as business or personal property. (ECF No. 45 at 58).  Given Wyckoff's conveniently selective memory, and that the only references in Wyckoff's schedules to computers and televisions mention them as business assets, the Court finds that the computers and televisions were business assets. (ECF No. 55 at 5). Wyckoff's schedules indicate that the money that she testified she used in order to add to SRLC's inventory and fixtures was borrowed after November 3, 2011 (the day she filed the lease application). (Case No. 12-33559, ECF No. 43 at 1-2).

This is a total of $19,600 in partnership assets. If the partnership had been wound up as ordered, Buggs would have received a distribution of approximately $9,800. This is the amount in damages under the first method of calculation.

### c. Half of Gross Income During the Wind Up Period

The state court ordered Wyckoff to wind up the partnership. Wyckoff continued to operate the business as KLAR for a period of time. Entities required to wind up may continue to do business to the extent necessary to wind up the business and to avoid unreasonable loss of the entity's property or business. TEX. BUS. ORG. CODE § 11.052(a)(1), § 11.053(d). The losses or profits during the winding up period will affect a partner's distributive share.

Wyckoff must account to Buggs for the profits made while she continued to operate KLAR, just as she would if she were continuing to operate the business during an orderly wind up. At some point during 2011, Wyckoff ceased operating her business as KLAR and began to operate it under the as an S Corporation known as SRLC. The burden is on Wyckoff to demonstrate which profits for the year 2011 apply to KLAR and which apply to SRLC.

Wyckoff never filed a Form 1120S in 2011 for SRLC (her wholly-owned S Corporation). As stated above, the Court believes that KLAR's schedule C (with its list of gross income and expenses) is essentially a combined tax document for KLAR and SRLC—with the exception of the $9,972 in profit Wyckoff attempted to segregate in SRLC.

Wyckoff failed to put forth any meaningful evidence to distinguish KLAR's profits from SRLC's profits. In response to inquiries as to her questionable business and tax practices, Wyckoff almost invariably responded with something equivalent to "I'm not a tax person" or "That's what the tax guy said to do." (*See, e.g.*, ECF No. 45 at 26). Although these statements may be true, Wyckoff was required to account for this income properly and failed to do so. As a

result, Wyckoff did not show that any of the income reflected in her schedules belonged to SRLC as opposed to KLAR.[2]

The Schedule C lists $69,829 of gross income for the year 2011. (Pl Ex. 1 at 3). This, added to the unexplained and unjustified $9,972 distribution from SRLC, results in a 2011 gross income of $79,801.

The Schedule C lists $76,141 in expenses. (Pl. Ex. 1 at 3). As the facts of this case, including Wyckoff's own testimony, contradict certain claimed expenses, the Court will not credit Wyckoff for: (i) the $18,553 for depreciation;[3] (ii) the $2,658 in legal fees; and, (iii) the $6,862 for contract labor. Subtracting these amounts from $76,343 brings the amount of actual expenses to $48,068.

Subtracting the actual expenses (of $48,068) from gross income (of $79,801) results in $31,733 of profit. Half of this total (the portion Wyckoff owes Buggs) is $15,866.50.

Finally, there is the issue of the fixtures. That is, noninventory partnership assets that Wyckoff still holds. Wyckoff's most recent schedules list the value of these fixtures at $2,097.00, half of which is $1,048.50. (Case No. 12-33559, ECF No. 55 at 5). Although it is arguable that the $4,000.00 figure from the November 3, 2011 lease should be used, the Court will allow some credit for decrease in value to the fixtures for the operations occurred during the wind up procedure.[4]

This brings the final total to $16,915.00 under the second damages measure.

---

[2] Any profits from 2012 necessarily belong to SRLC because Wyckoff stopped operating under the KLAR entity at some point in 2011.

[3] This is a non-cash expenditure that should not affect required wind-up distributions.

[4] Again, by this the Court means the period during which Wyckoff operated the business in violation of the state court wind up order, before operating the business under the SRLC entity.

### III.  Additional Briefing

Damages using the second calculation method are greater than with the first.  As Buggs is entitled to the greater of the two measurements, the amount of the debt is $16,915.00.  As explained above, the debt is excepted from discharge.

After the trial, the Court allowed post-trial briefing on the damages issue.  (ECF No. 45 at 120).  However, the Court also stated its firm belief that, based on the record before it, a judgment would be issued between the amounts of $9,000 and $13,000.  (ECF No. 45 at 124).  As this judgment materially exceeds this upper boundary, the Court will allow Wyckoff, if she so chooses, to file additional briefing objecting to the amount of damages.

Any such briefing must be submitted within three weeks of the entry of this order.  If no briefing is submitted, the Court will issue a judgment in accordance with this Memorandum Opinion.  If Wyckoff submits additional briefing, Buggs will have two weeks to respond.

### Conclusion

The Court will issue a judgment following receipt of supplemental briefing, if any..

SIGNED **April 8, 2013.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE